**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

**Dated: March 31 2011**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 10-31775 |
| | ) | |
| James Allen Caperton and | ) | Chapter 7 |
| Julie Ann Caperton, | ) | |
| | ) | |
| Debtors. | ) | JUDGE MARY ANN WHIPPLE |

### MEMORANDUM OF DECISION REGARDING
### OBJECTION TO HOMESTEAD EXEMPTION

This case came before the court for hearing on the Chapter 7 Trustee's objection to Debtors' claim of a homestead exemption ("Objection") [Doc. #34] and brief in support of Objection [Doc. #45], and Debtors' motion to overrule the Trustee's Objection [Doc. # 37] and reply to the Trustee' brief in support of the Objection [Doc. # 46]. The court held a hearing on the Objection that Debtors, their counsel and the Chapter 7 Trustee ("Trustee") attended in person and at which the parties presented testimony and other evidence in support of their respective positions.

The district court has jurisdiction over this Chapter 7 case pursuant to 28 U.S.C. § 1334(a) as a case under Title 11. It has been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 84-1 of the United States District Court for the Northern District of Ohio. A proceeding regarding exemptions from property of the estate is a core proceeding that the court may hear and determine. 28 U.S.C. § 157(b)(1) and (b)(2)(B). For the reasons stated below, the court will sustain the Objection.

## FACTUAL BACKGROUND

In 2004, Debtors purchased real property in Williams County, Ohio, consisting of an approximately five-acre tract on which their home, two barns and a pond are located ("the House Property"), and another approximately five-acre tract of vacant land ("the Undeveloped Property") that is situated adjacent to and contiguous with the House Property. The properties were purchased simultaneously, albeit by separate deeds. Both properties are identified by separate legal descriptions and are distinguished as separate parcels by the Williams County Auditor.

Although no crop was planted on March 22, 2010, the date Debtors filed their Chapter 7 petition, every year since they purchased the Undeveloped Property, Debtors have leased the property to a farmer for planting crops. The farmer plants crops on approximately four of the five acres comprising the Undeveloped Property. According to Debtors, a portion of that property that is not farmed is also used by them two to three times per year to burn large tree branches and for what Julie Caperton characterized as a rock garden. The rock garden consists of field rocks collected from their properties for the purpose of building up a low area of the Undeveloped Property and which comprises approximately a twenty-foot diameter area. The Undeveloped Property is also used by Debtors for walking their three dogs on a daily basis and by their children, ages seventeen and nine, for riding their all terrain vehicles (ATVs). According to Julie Caperton, her children ride their ATVs throughout the property when there is no crop planted and otherwise around the perimeter of the property. James Caperton testified that Debtors purchased the Undeveloped Property to protect their privacy and prevent the property from being developed.

Debtors filed their Chapter 7 bankruptcy petition on March 22, 2010. On bankruptcy Schedule A, they separately list the House Property and the Undeveloped Property. [Doc. 1, p. 10, Schedule A].[1] Debtors' schedules show no equity in the House Property, valuing it at $148,200 and indicating that it is encumbered by a mortgage in the amount of $197,968. They value the Undeveloped Property at $10,900, and indicate that it is unencumbered by any mortgage. [*Id.*] On Schedule C, Debtors claim an exemption under Ohio Revised Code § 2329.66(A)(1) in the amount of $10,900 in the Undeveloped Property only. [*Id.*, p. 15, Schedule C]. Debtors have indicated an intention to surrender the House Property. [*Id.,* p. 35, Statement of Intention].

---

[1] The court takes judicial notice of the contents of its case docket and Debtors' schedules. Fed. R. Bankr. P. 9017; Fed. R. Evid. 201(b)(2); *In re Calder*, 907 F.2d 953, 955 n.2 (10th Cir. 1990); *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1171-72 (6th Cir. 1979) (stating that judicial notice is particularly applicable to the court's own records of litigation closely related to the case before it).

**LAW AND ANALYSIS**

As authorized by 11 U.S.C. § 522(b)(2), the Ohio legislature opted out of the federal exemptions provided in § 522(d). *See* Ohio Rev. Code § 2329.662. As a result, debtors for whom the applicable exemption law under § 522(b)(3)(A) is Ohio law must claim exemptions under the relevant Ohio statutes and under applicable non-bankruptcy federal law. There is no dispute that Debtors have been domiciled in Ohio for more than the 730 days preceding the date of the filing of their petition such that Ohio exemption law applies in this case. *See* 11 U.S.C. § 522(b)(3)(A).

Under Bankruptcy Rule 4003(c), the party objecting to the exemption, in this case the Trustee, has the burden of establishing that the debtor is not entitled to the claimed exemption. *In re Andrews,* 301 B.R. 211, 213 (Bankr. N.D. Ohio 2003). The standard of proof is by a preponderance of the evidence. *In re Roselle*, 274 B.R. 486, 490 n.4 (Bankr. S.D. Ohio 2002). In making this determination, and in order to further the fresh-start policy of the Bankruptcy Code, exemption statutes are generally to be liberally construed in a debtor's favor. *In re Andrews*, 301 B.R. at 213. The rule that exemption statutes are to be construed liberally in favor of the debtor is also followed by the courts of Ohio. *See, e.g., Daugherty v. Central Trust Co.*, 28 Ohio St.3d 441 (1986); *Dennis v. Smith*, 125 Ohio St. 120 (1932); *Sears v. Hanks*, 14 Ohio St.298, 301)(1863)("The [homestead] act should receive as liberal a construction as, can fairly be given to it.").

The Trustee objects to Debtors' claim of an exemption in the Undeveloped Property. Pointing to language in the Ohio statute limiting the homestead exemption to just "one parcel" of real property that a person "uses as a residence," the Trustee argues that the Undeveloped Property is not used as a residence and is a separate parcel from the House Property. Debtors counter that the homestead exemption applies because the property is contiguous to the House Property and is used as an extension of the residence.

The parties' arguments require the court to construe the meaning and scope of the terms "parcel" and "uses as a residence," neither of which is defined in the Ohio exemption statute. In applying state statutory law, a federal court must give the state statute "the meaning and effect attributed to it by the highest court of the state, as if the state court's decision were literally incorporated into the enactment, whatever the federal tribunal's opinion as to the correctness of the state court's views." *Burns Mortgage Co. v. Fried*, 292 U.S. 487, 494 (1934). There is, however, no controlling Ohio Supreme Court authority that interprets the application of the terms "parcel" and "uses as a residence" in § 2329.66(A)(1)(b) under any theory presented in this case. In the absence of controlling state case law, the federal court's role is to "ascertain how [the Ohio Supreme Court] would rule if it were faced with the issue." *Meridian Mut. Ins.*

3

*Co. v. Kellman*, 197 F.3d 1178, 1181 (6th Cir. 1999). The Ohio Supreme Court, in turn, directs that statutory interpretation requires a court to ascertain the legislative intent in enacting a statute. *Carnes v. Kemp*, 104 Ohio St. 3d 629 , 632 (Ohio 2004). "In order to determine that intent, a court must first look to the words of the statute itself," *id.,* and all statutes that relate to the same general subject matter must be read *in pari materia, id.* The Sixth Circuit directs that this court may use the decisional law of the state's lower courts and other federal courts construing state law to determine how the Ohio Supreme Court would rule on an issue of statutory interpretation. *Meridian Mut. Ins. Co.,* 197 F.3d at 1181.

I.  **The House Property and Undeveloped Property Do Not Constitute "One Parcel" of Real Property as Contemplated Under Ohio Revised Code § 2329.66(A)(1)(b)**

This court addressed the meaning of "one parcel" as used in § 2329.66(A)(1)(b) in a recent opinion it rendered in *In re Miller*, Case No. 10-30025, Doc. # 42 (March 28, 2011). The court considered the definition of "parcel" as set forth in *In re Gregory*, 229 B.R. 168 (Bankr. N.D. Ohio 1999), and *In re Williams*, 345 B.R. 853 (Bankr. N.D. Ohio 2006), cases also cited by Debtors in this case, as well as the Ohio Supreme Court's construction of the term "parcel" in *Park Ridge Company v. Franklin County Board of Revision*, 29 Ohio St. 3d 12 (1987).

In *In re Gregory*, the trustee objected to the debtors' claim of a homestead exemption in real property shown in the county auditor's records as containing 19.448 acres of land. The trustee argued that the term "one parcel" in the Ohio exemption statute should be defined to mean a "homestead" as is defined in Ohio Rev. Code § 323.151(A) for purposes of collecting property taxes to mean "so much of the land surrounding it, not exceeding one acre, as is reasonably necessary for the use of the dwelling or unit as a home." *In re Gregory*, 229 B.R. at 169. Finding that definition expressly limited to those sections of the Ohio Revised Code dealing with the homestead exemption for property tax purposes, the bankruptcy court cited Black's Law Dictionary for the general definition of "parcel" as "a contiguous quantity of land in possession of, owned by, or recorded as property of the same person." *Id.* The court went on to overrule the trustee's objection, explaining that while an earlier version of the Ohio exemption statute provided for carving out a one-acre exempt area, the Ohio legislature repealed that division of property scheme in 1979 and passed the current form of exemption laws found in § 2329.66. The court found that "Ohio law no longer provides for a restriction of the homestead exemption to a one acre parcel to be divided out of the Debtors' total residential real property" and held that the dollar amount of the exemption set forth in §2329.66 "is applicable to the entire homestead interest." *Id.* at 170.

In *In re Williams*, the debtors claimed an exemption in two properties, land on which their home was

4

located and a non-contiguous thirty-acre parcel of land. *In re Williams*, 345 B.R. at 855. The trustee objected to the exemption in the thirty acres since the land was "not adjacent to the homestead." *Id.* at 856. Citing *In re Gregory*, and applying the definition of "parcel" set forth in that case, the court held that "only the debtors' residence, not their 30-acre noncontiguous parcel of land, can be claimed as exempt under § 2329.66(A)(1)(b)." *Id.*

Notwithstanding the definition in *In re Gregory* and *In re Williams*, it is the Trustee's position that "parcel" must be further defined by the legal description of real property and the permanent parcel number assigned to that property by the county auditor. While it is true that neither *In re Gregory* nor *In re Williams* involves two contiguous properties with separate legal descriptions and separate permanent parcel numbers as is the case here, guided by the Ohio Supreme Court's interpretation of "parcel" in *Park Ridge Company,* the court concluded in *In re Miller* that the Ohio Supreme Court would not embrace the definition of parcel advanced by the Trustee. *In re Miller*, Case No. 10-30025, Doc. # 42, pp. 5-6.

In *Park Ridge Company*, the Ohio Supreme Court considered the meaning of the term "lot or parcel of real estate" as used in Ohio Revised Code § 5713.01, which requires the county auditor to determine the true value in money of "each lot or parcel of real estate. . . ." The auditor argued that the terms refer to permanent parcels defined on the auditor's records with separate parcel numbers, thus requiring the auditor to value each numbered parcel separately. *Id.* at 15. Rejecting that argument, the Court noted that Ohio's real property tax law uses the terms "tract," "lot," and "parcel" interchangeably and explained:

> Numbered permanent parcels facilitate conveyancing and may serve other valuable purposes. However, there is no valid reason why their relatively arbitrary boundaries must always limit valuation practices for real property taxes. The true value for real property may well depend on its potential use as an economic unit. That unit may include multiple parcels, or it may be part of a larger parcel, on the auditor's records. The boundaries of that unit may change with time and circumstances. Thus, a separate tract for valuation purposes need not correspond with a numbered parcel.

*Id.* The Court, therefore, held that "[f]or tax valuation purposes, property with a single owner, for which the highest and best use is a single unit, constitutes a tract, lot, or parcel." *Id.* at 16.

Although the Ohio Supreme Court's interpretation of "parcel" in *Park Ridge Company* was not in the context of the Ohio exemption statute, this court nevertheless found it instructive as to how it would rule if presented with the issue of determining the meaning of parcel in § 2329.66(A)(1)(b). This court noted that even under real property tax law, the term "parcel" is not a term of art, and the county auditor's designation of parcel numbers does not necessarily define "parcel" for all purposes relating thereto. *In re Miller*, Case No. 10-30025, Doc. # 42, p.6.

5

Giving the Ohio homestead exemption provision a liberal construction as is required by other Ohio Supreme Court precedent, the court concluded in *In re Miller* that the Ohio Supreme Court would define "parcel," as used in § 2329.66(A)(1)(b), more broadly than the permanent parcel defined in the auditor's records with a separate parcel number. As the Ohio Supreme Court similarly concluded in *Park Ridge Company*, this court found no valid reason why the numbered permanent parcels must always limit the determination of a parcel of real property used as a person's residence and found that real property used as a residence may well include more than one numbered parcel in the auditor's record. An obvious example noted by the court is where a person purchases two vacant lots and builds a home situated in part on both lots.

Based on the analogous reasoning in *Park Ridge Company* and the general definition of parcel as set forth in *In re Gregory* and *In re Williams*, this court further concluded in *In re Miller* that the Ohio Supreme Court would hold that a contiguous quantity of land in possession of, owned by, or recorded as property of the same person may constitute "one parcel" for purposes of the homestead exemption, irrespective of whether that quantity of land includes more than one numbered parcel in the county auditor's record, to the extent that the land is a single unit in its use by the person or a dependent of the person as a residence. *Id.; Cf. In re Ford*, 415 B.R. 51, 58 (Bankr. N.D.N.Y. 2009) (finding that two parcels qualified as "one lot of land" under the New York homestead exemption provision where both parcels were used for residential purposes). The court noted that where property is used as a residence, the purpose of the statutory limitation to one parcel is more likely intended to prevent debtors from claiming an exemption in two separate residences, such as a home in Ohio that is used as a residence for part of the year and a home on Catawba Island used as a residence for part of the year. *In re Miller*, 10-30025, Doc. # 42, p.6. For the reasons discussed below, the court finds that the House Property and the Undeveloped Property at issue in this case, although they are contiguous, do not constitute a single unit in their use by Debtors and, thus, do not constitute "one parcel" under § 2329.66(A)(1)(b).

II. **Debtors' Use of the Undeveloped Property Does Not Constitute Use as a Residence.**

There being no dispute that the House Property is used as the Debtors' residence, the court must determine whether Debtors' use of the Undeveloped Property constitutes use as a residence. In *In re Miller,* this court also addressed uses of property that would constitute use as a residence. As stated earlier, there is no statutory definition of "uses as a residence." The general definition of "residence" is a "place where one actually lives" or a "house or other fixed abode; a dwelling." Black's Law Dictionary (9th ed. 2009). There being no Ohio case law to assist the court in determining what constitutes using property as a

residence, in addition to the general definition of "residence," in *In re Miller,* the court also examined the following cases from other jurisdictions with homestead exemption laws requiring that the property claimed as exempt be used as a residence. *Id.* at 7-9 (citing *In re C.S.*, 115 Ohio St. 3d 267, 281-82 (2007) (finding persuasive the reasoning of Connecticut court in interpreting statute); *State v. Tuomala*, 104 Ohio St. 3d 93, 97-98 (2004) (looking to cases in other jurisdictions in interpreting criminal statute); *State v. Murphy*, 49 Ohio St. 3d 206, 209 (1990) (same)).

In *In re Lanier*, 394 B.R. 382 (E.D.N.C. 2008), the court affirmed the bankruptcy court's decision allowing the Chapter 7 trustee's objection to the debtors' claim of a homestead exemption in a nine-acre lot adjacent to the twelve-acre lot on which their home was located. The debtors used the nine-acre lot to raise rescued horses used to minister to people in their church and community. *In re Lanier*, 2008 WL 1806117, *1 (Bankr. E.D.N.C. April 18, 2008). The bankruptcy court noted that there was "no structure, storage shed, well, driveway, parking area, playground, septic system, or easement" on the nine-acre lot and that the children that visited the horses were not dependents of the debtors. *Id.* at *2. It, therefore, concluded that the use to which the debtors put the property "[was] not linked to the support, existence, or enhancement of the structure in which the debtors live." *Id.*

In *In re Hughes*, 306 B.R. 683 (Bankr. M.D. Ala. 2004), applying Alabama's homestead exemption, which is "extended to property devoted to 'use and occupancy as a home, a dwelling place,'" the court allowed an exemption in property adjacent to leased property on which debtors' home was located. *Id.* at 686. The court stated that "the Alabama exemption, protecting the interest of a person in his residence, applies because of the use to which the land is put, not because of the fixtures on it or the quality of the debtor's interest." The court found that debtors' use of the property for parking their vehicles and as a playground for their children "was consistent with homestead purposes." *Id.*

In determining for purposes of the state's homestead exemption whether a debtor uses property as a residence, other courts similarly do not restrict their inquiry to simply the location of the structure in which the debtor lives. *See In re Macleod*, 295 B.R. 1, 6 (Bankr. D. Me. 2003) (explaining that "[r]esidential use may extend also to contiguous property which is used for a complimentary [*sic*] activity, like family recreation"); *In re Jones*, 397 B.R. 765, 770-71 (Bankr. D.S.C. 2008) (applying the South Carolina homestead exemption, which is proper only in real property that the debtor uses as a residence, and allowing the debtors to include in their exemption an adjacent lot that they used for access to their house); *In re Edwards*, 281 B.R. 439, 450 (Bankr. D. Mass. 2002) (finding that debtor satisfied the Massachusetts homestead requirement that he "occupy the property in question as his principal residence" with respect to

7

a parcel adjacent to the parcel on which his home was located where the debtor had landscaped a portion of the adjacent parcel, built a garden shed and dog run on it and his children used the adjacent parcel as a play area); *In re Mohammed*, 376 B.R. 38, 42 (Bankr. S.D. Fla. 2007) (rejecting trustee's argument that adjacent lot was not part of the debtors' residence where debtors planted fruit trees on the lot and used the lot for the family's recreational activities and for their dogs); *In re Ford*, 415 B.R. at 58 (applying New York law and finding that debtor's use of a parcel of land was for residential purposes as it was the location of the well and septic system that supported the adjacent residential property).

Notwithstanding the lack of Ohio case law addressing the issue, based on the foregoing authorities, and construing the Ohio homestead exemption provision liberally in favor of debtors, the court concluded that the Ohio Supreme Court would hold that a debtor uses property as a residence if the use is linked to the support, existence, or enhancement of the structure or for activities normally associated with a residence, such as family recreation. *In re Miller*, Case No. 30025, Doc. # 42, p. 8. In *In re Miller*, the court found that the debtors use a 2.2 acre pasture contiguous to their home for such purposes. Use of the property is necessary to maintain the septic system that supports their home and to pasture horses owned by them and is used by their sons to practice for horse-riding/showing competitions and by their family for bon fires and paint ball tournaments. Ms. Miller also used the property for the business purposes of horse-riding lessons and pasturing several horses that she boards for others. Nevertheless, while the court recognized that use of property for business purposes may render the property ineligible for the homestead exemption where such use is the primary use of the property, *id.* at 8 (citing *In re Holt*, 357 B.R. 917, 923-24 (Bankr. M.D. Ga. 2006) (finding that debtors were not entitled to a homestead exemption in rental property that was contiguous with their residences); *In re Radtke*, 344 B.R. 690, 693 (Bankr. S.D. Fla. 2006) (same)), the court found the debtors' business use of the property was not its primary use and was merely incidental to the family's use for residential purposes, *id.* at 8-9.

Unlike the situation in *In re Miller*, Debtors' use of the Undeveloped Property is primarily as income producing rental property. Although no crop was actually planted on March 22, 2010, the date Debtors filed their Chapter 7 petition, Julie Caperton testified that they have leased the property to a farmer for planting crops every year since they purchased the property and gave no indication that they did not intend to continue doing so. The court does not find, as argued by Debtors, that because a crop had not yet been planted on the date they filed their petition, perhaps because it was simply too early to plant crops for the 2010 season, that the property's primary use is not as rental property. The court finds Debtors' use of a relatively small portion of the property to collect rocks and burn tree limbs and their use of the property for

8

walking their dogs and their children riding their ATVs is incidental to the primary use as rental property. The primary use of the Undeveloped Property being a business use, the court finds that Debtors do not use both the Undeveloped Property and the House Property as a single unit as a residence. This finding is buttressed by the fact that Debtors have indicated an intention to surrender the House Property and seek to retain the Undeveloped Property for use independent of the House Property.

## **CONCLUSION**

For the foregoing reasons, the court concludes that the House Property and the Undeveloped Property do not constitute "one parcel" of real property as that term is used in § 2329.66(A)(1)(b). As such, Debtors are not entitled to claim the Ohio homestead exemption against the Undeveloped Property. The Trustee's Objection will, therefore, be sustained.

The court will enter a separate order in accordance with this Memorandum of Decision.